# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**AMBER PIPER,** and
**OSCAR AQUINO,**                                              Case No.:       8:18-cv-03038

    Plaintiffs,

v.

**METRO SOLUTIONS, LLC,**

    Defendant.
_____/

## DEFENDANT'S TRIAL BRIEF

Defendant, METRO SOLUTIONS, LLC (hereinafter, "METRO SOLUTIONS"), by and through its undersigned counsel and pursuant to the Case Management and Scheduling Order dated February 27, 2109, hereby submits the following Trial Brief.

### I.  PRELIMINARY STATEMENT

Plaintiffs, Amber Piper and Oscar Aquino, filed complaints with the Equal Employment Opportunity Commission (EEOC) on June 22, 2018 after their employment relationship with Defendant, Metro Solutions, had already ended.

Within her EEOC complaint, Ms. Piper alleged a general claim of sexual discrimination based upon her protected status as a female. To support these allegations, Ms. Piper referenced comments that she discovered co-workers had made about her in a group chat and also stated that she had heard that Metro Solutions and the owner, Christopher Brown, had a policy against hiring women for various gender-related reasons. Ms. Piper made no mention of any tangible employment actions taken by the Defendant in

1

supporting her complaint of discrimination. Mr. Aquino supported his EEOC complaint by alleging that his employment was terminated by Metro Solutions in retaliation for his opposition to Metro Solution's "discriminatory behavior towards the female employees of Metro Solutions."

The EEOC was unable to process the charges within 180 days of the date they were filed, so they issued an *Early Notice of Right to Sue* on November 7, 2018. Plaintiffs subsequently filed a Complaint on December 17, 2018, making the following claims: one count of hostile environment sexual harassment by Plaintiff Amber Piper against Metro Solutions (COUNT I); one count of retaliation by Plaintiff Oscar Aquino against Metro Solutions (COUNT V); and three counts alleging violations of the FLSA overtime provisions by Plaintiff Amber Piper against both Christopher Brown and Metro Solutions (COUNTS II, III, and IV).

The parties settled the claims involving FLSA violations. The two remaining claims are actions brought only against Metro Solutions, LLC under Title VII of the Civil Rights Act of 1964 for hostile environment sexual harassment and retaliation.

## I.    ARGUMENT

### A.    PLAINTIFF AMBER PIPER'S HOSTILE ENVIRONMENT SEXUAL HARASSMENT CLAIM

#### i.    Overview of Applicable Law

Pursuant to the Joint Proposed Jury Instructions and Joint Proposed Verdict Form, submitted by the parties on February 24, 2019, and Eleventh Circuit Pattern Jury Instruction 4.7, the Plaintiffs have agreed that Plaintiff Amber Piper must prove each of the following elements against Metro Solutions by a preponderance of the evidence:

> First: Co-workers harassed AMBER PIPER because of her sex;
>
> Second: The harassment created a hostile work environment for AMBER PIPER;
>
> Third: AMBER PIPER'S supervisor knew, or in the exercise of reasonable care should have known, about the hostile work environment;
>
> Fourth: AMBER PIPER'S supervisor failed to take prompt remedial action to eliminate the hostile work environment; and
>
> Fifth: AMBER PIPER suffered damages because of the hostile work environment.
>
> A "hostile work environment" created by harassment because of sex exists if:
>
> a. AMBER PIPER was subjected to offensive acts or statements about sex – even if they were not specifically directed at her;
>
> b. AMBER PIPER did not welcome the offensive acts or statements, which means that AMBER PIPER did not directly or indirectly invite or solicit them by her own acts or statements;
>
> c. the offensive acts or statements were so severe or pervasive that they materially altered the terms or conditions of AMBER PIPER'S employment;
>
> d. a reasonable person – not someone who is overly sensitive – would have found that the offensive acts or statements materially altered the terms or conditions of the person's employment; and
>
> e. AMBER PIPER believed that the offensive acts or statements materially altered the terms or conditions of her employment.

### ii. Analysis of Elements at Issue

#### i. Harassment Based Upon Claimant's Sex

Plaintiff, Amber Piper, claims she has been subject to harassment by Defendant because of her female sex. The Defendant asserts that most, if not all, of the evidence of

Defendant's conduct that Ms. Piper has offered as offensive and attributable to her sex is actually not related to her sex at all.

Title VII "does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of . . . sex.'" *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998). The Supreme Court has never held that "workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations." *Id.* Instead, the Supreme Court has found that the critical issue under Title VII is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Reeves v. C. H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010) (en banc) (quoting *Oncale*, 523 U.S. at 80).

In *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998), the U.S. Supreme Court outlined three ways that a plaintiff can show that the conduct to which she was allegedly subject was based on sex, including: (1) that the challenged conduct was motivated by sexual desire; (2) that she was harassed "in such sex-specific and derogatory terms…as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace"; or (3) "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Melissa Smith v. City of New Smyrna Beach*, 2013 WL 5230659, *5 (M.D. Fla. 2011) (quoting *Oncale*, 523 U.S. at 80-81).

Both the Supreme Court and the Eleventh Circuit have repeatedly acknowledged that "Title VII is not a general civility code, and not all profane or sexual language or

4

conduct will constitute discrimination in terms and conditions of employment" *Reeves*, 594 F.3d at 807. Rather, Title VII prohibits discrimination in the form of harassment in cases where the harassment is based on the Plaintiff's protected category such as sex. *Reeves*, 594 F.3d at 809 (quoting *Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1301-02). The Eleventh Circuit has also established that the conduct at issue must be viewed "cumulatively, and in its social context" rather than in isolation. *Melissa Smith*, 2013 WL 5230659, *10 (M.D. Fla. 2011) (quoting *Reeves,* 594 F.3d at 807).

In support of her claim, Ms. Piper alleges that she was subjected to unwelcome conduct consisting of (1) inappropriate comments made by some of her co-workers in a private group chat; and (2) her belief that Metro Solutions has a "policy of not hiring women" based upon what she had allegedly been told by her brother, a former employee, and Co-Plaintiff Oscar Aquino.

With respect to the comments made between co-workers in a private group chat, Ms. Piper has verified in her deposition that the offensive comments made about her in the chat are not based on her sex at all. (Piper Dep. 44:19-25, 45:1-2, Aug.19, 2019). When asked by Defendant's counsel which comments she found specifically offensive in the chat, Ms. Piper responded with the following statement: "[t]alking about: are we going to add the girls onto the chat; they said that they didn't know that I would last; and then the part about my size and them saying, Hey, show me a picture of a -- of Amber and something about a whale." (Piper Dep. 44:19-25, 45:1-2). She then stated in conclusion: "[t]hey kept referring to about my size." (Piper Dep. 45:3).

With respect to Ms. Piper's allegation of Metro Solution's overall disparate treatment of women, Ms. Piper has failed to provide evidence other than statements allegedly made by two former employees, one of which happens to be her brother, and Co-Plaintiff Oscar Aquino. (Piper Dep. 14:24-25, 15:1, 68:1-5). Ms. Piper testified that, prior to moving to Florida to apply for a job with Metro Solutions, her brother had told her that Metro Solutions did not hire women and that he was told this by Oscar Aquino. (Piper Dep. 14:21-25, 15:1, 16:5-7). She further testified that she asked her brother to "hook [her] up with a job," that her brother agreed to talk to Oscar Aquino on her behalf, and that Mr. Aquino had agreed to give Ms. Piper "a chance" at employment with Metro Solutions. (Piper Depo. 16:12-23, 17:1-13). However, Mr. Aquino testifies that he was allegedly first told that Metro Solutions didn't hire women only after Ms. Piper had been hired, and only after she had complained of coworker's comments in the group chat to Mr. Aquino. (Aquino Depo. 38:6-9, Aug. 15, 2019) (stating in response to counsel for Defendant's question regarding the time at which Mr. Aquino spoke to Christopher Brown about Ms. Piper's report: "and then at that time, that is when [Christopher Brown] was telling me, this is why I don't hire - I don't hire women.")

Despite the statements allegedly made to Ms. Piper regarding the Defendant's policy on hiring women, Metro Solutions had three females employed at the time Ms. Piper was hired by Defendant. Two of these female employees, Ashley Norris and Rachel Pifer, maintained long-term management positions with Metro Solutions working alongside the owner, Christopher Brown, in overseeing matters pertaining to billing, employee record-keeping, and other important functions necessary to operate the company. Ms. Piper had

knowledge of the employment of these females with defendant because she acknowledges that she was introduced to both Ashley Norris and Rachel Pifer on the same day she was first employed with Metro Solutions. (Piper Dep. 20:16-20).

Plaintiffs' have submitted a Motion to exclude evidence of these two female employees, which is currently pending a decision by the Court. (Doc. 35, Pg. 2). In opposing this motion, Defendant intends to offer the testimony of both female employees at trial to rebut Ms. Piper's allegations that Metro Solutions has a policy against hiring women.

Ms. Piper further alleges that she has been "targeted" by the Defendant on the basis of her sex because the owner, Christopher Brown, had on one occasion pretended to be a shopper at Ms. Piper's store to test her knowledge of store product. She also alleges that Christopher Brown ordered her supervisor to take tangible employment actions against her because of her sex - such as issuing warning notices for things like failing to close the register, failing to drop off deposits, arriving late to work, and failing to disclose her two felony convictions on her job application.

In defense, Metro Solutions asserts that Christopher Brown's "secret shopper" activity was an exercise frequently utilized by the Defendant to test the progress, sales pitch technique, and product knowledge of new employees, regardless of gender, in every case where Mr. Brown was visiting a store staffed by a new employee whom he had not met or interviewed. "Secret shopping," more commonly referred to as "mystery shopping," is a popular tool commonly used in retail businesses to "test employee product knowledge, sales technique, and more" by collecting "observation research" through interactions

between the mystery shopper and the sales employee that can be used to address performance-related issues. *See* Carlos W. Moore, et al., *Managing Small Business: An Entrepreneurial Emphasis*, South-Western Cengage Learning, 190 (14th ed. 2008).

The Defendant has also offered evidence of "disciplinary warning notices" that were distributed to male employees with the same position as Ms. Piper, during the same time period, and for the same conduct exhibited by Ms. Piper in order to show that these were issued for performance-related conduct bearing no relation to Ms. Piper's sex. *See Melissa Smith*, 2013 WL 5230659 at *5 (M.D. Fla. 2011) ("In determining whether employees are similarly situated[,]…it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways" and that "the person imposing discipline knew of the comparator's alleged misconduct 'and that the known violations were consciously overlooked.'" (citing *Marshall v. Mayor Alderman*, 366 F. App'x 91, 98 (11th Cir. 2010) (citations omitted))). Many of these warnings are supported by evidence of Ms. Piper's misconduct in the form of cash register reports, time clock reports, and photographs of deposits held by the Plaintiff.

The Plaintiffs have also claimed that the Defendant owner, Christopher Brown, had instructed Mr. Aquino to terminate Amber Piper's employment at one point subsequent to her complaint about the coworker's group chat comments and Mr. Brown's "secret shopper" visit. The Plaintiffs have further implicated that this instruction by Mr. Brown was motivated by either retaliation for Ms. Piper's complaint or because of his alleged intolerance for female employees. However, upon being asked what Mr. Brown had said to him regarding Ms. Piper following these events, Mr. Aquino stated: "After the fact of

8

all this stuff that was going down on the transitioning, I did tell Amber that, you know, [Christopher Brown] wanted me to let her go because he told me that [Amber Piper was] - I'm sorry - fat and lazy, you know, in the store and I - I made her aware of that." (Aquino Dep. 49:9-15). In discussing what Ms. Piper was allegedly told by Mr. Brown during the secret shopper incident, Ms. Piper testified that Mr. Brown told her that she was "lazy, told [her she] didn't give a shit about [her] job, told [her] that all [she] did was….see [her] eating." (Piper Dep. 48:1-4). Although Defendant denies the content alleged in these conversations, the testimony of Mr. Aquino and Ms. Piper is further evidence that Ms. Piper's sex was not a motivating factor in any action taken by Defendant.

Instead, the Defendant will offer evidence at trial, including the Plaintiffs' own testimony, of Ms. Piper's poor work performance, unwillingness to improve, and overall hostile attitude towards management as a result of her inability to accept any form of constructive criticism in relation to her work performance.

### ii.   "Severe and Pervasive" Harassment Creating Hostile Work Environment and Prompt Remedial Action

The conduct for which Plaintiff Amber Piper bases her claim of hostile environment sexual harassment, even if found to have been motivated by the Plaintiff's sex, fails to meet the "severe and pervasive" standard for actionable hostile environment sexual harassment.

"Harassment is severe or pervasive…***only if*** it is both subjectively and objectively severe and pervasive." *Johnson v. Booker T. Washington Broad Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000) (emphasis added); *see also Maldonado v. Publix Supermarkets*, 939 So. 2d 290, 294-95 (Fla. 4th DCA 2006) ("[T]he employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of

9

employment, and the subjective perception must be objectively reasonable," i.e., "judged from the perspective of a reasonable person in the plaintiff's position, taking into consideration all the circumstances.").

In assessing whether harassment is sufficiently severe or pervasive, courts typically look to: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening and humiliating or just a mere utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance. *See Maldonado*, 939 So. 2d at 295-96.

This standard is very high and is "designed to be sufficiently demanding to ensure that Title VII does not become a general civility code." *Marcelin v. Eckerd Corp. of Fla., Inc.*, No. 8:04- cv-491, 2006 WL 923745, at *7 (M.D. Fla. April 10, 2006) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)); *see also Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000) ("Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace."); *Maldonado*, 903 So. 2d at 294 ("This requirement is regarded as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace -- such as male-on-male horseplay or intersexual flirtation -- for discriminatory conditions of employment.") (internal citations and quotations omitted).

To satisfy this standard, Plaintiff must show that the workplace was "permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 20-21 (1993). This generally requires a showing of "extensive, long lasting, unredressed, and uninhibited sexual threats or conduct." *Maldonado*, 939 So. 2d at 294.

"[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms or conditions of employment.'" *Id.* (citing *Faragher*, 524 U.S. at 788).

Ms. Piper's claim is based primarily on three events for which she alleges created a hostile environment because of her sex: (1) the comments made by her coworkers in a private group chat; (2) Christopher Brown's "secret shopper" exercise; and (3) Mr. Brown's promotion of Ryan Cassidy to replace Oscar Aquino as supervisor.

In addressing the first event, the Defendant directs the Court's attention to the circumstantial evidence surrounding the group chat comments made by coworkers using an instant messaging application called "GroupMe." This group chat had been created separately from the one designated for professional employee use by Metro Solutions. This separate group chat (the "Private Chat") was not authorized by Metro Solutions for employee communications and, consistent with this fact, it did not contain any members that were managers or supervisors of Metro Solutions. Ms. Piper has acknowledged that she was aware of the professional chat group designated for employee use, and that she voluntarily joined the Private Chat upon being invited to do so by her coworker Ryan Cassidy. The Private Chat was created by Ryan Cassidy, who was Ms. Piper's coworker, not supervisor, throughout the duration of the existence of the Private Chat.

Based on the printed copy of the Private Chat offered into evidence by Plaintiffs, the group chat consisted of several male employees and was in existence for only approximately 35 days before being reported by Ms. Piper to her supervisor, Mr. Aquino. As discussed above, the only comments within the chat that Ms. Piper cited as offensive

occurred on *a single day* among all 35 days of the Private Chat's existence. Furthermore, these comments were made well before Ms. Piper was added to the Private Chat and, based on the context surrounding why she was added, it appears obvious that Ryan Cassidy had forgotten about the conversation implicating Ms. Piper when he chose to add her. Rather, after comparing the messages in the professional work-related chat group to those in the Private Chat on the same day, the circumstantial evidence shows that Ms. Piper had just been reprimanded by Mr. Aquino for a conversation unrelated to her employment in the professional group chat. In response, Ryan Cassidy added her and other male coworkers (none of which were managers or supervisors) to the Private Chat and introduced them to the Private chat by commenting that "this is the other chat" and that "[they] don't use it very much, but maybe [they] should now."

Upon accepting the invitation to join the chat, Ms. Piper scrolled up and discovered that comments had been made regarding her weight and about her frequent complaints about the pay and being a "zombie" at work. All comments in which the coworkers had implicated Ms. Piper were made on April 26, 2018.

The isolated conversation is primarily centered around an event in which a coworker in the professional chat changes his GroupMe account username to "Thomas Loves Big Bitches," which appeared as his username in the professional chat for a period of less than an hour before he changed his username again. Because Thomas' username appeared in both the private and professional chats, Ms. Piper responded to Thomas' username by commenting in the professional chat that she "approved" of his new username. Reacting to Ms. Piper's approval of the derogatory username, the members of

the Private Chat proceeded to have a conversation in the Private Chat about Ms. Piper's comment and about her weight. The entire extent of this conversation spanned a period from 2:30 p.m. through 3:52 p.m., less than two hours, on April 26, 2018. No other comments implicated Ms. Piper except for a brief ten-minute period earlier that morning in which two of the members chat about whether they were going to add any of the female coworkers in addition to the following comments: "Why amber a zombie huh?"; "That and all she does is complain about the pay"; "I don't get why people get hired and bitch about they pay [] if you don't like it then say it and don't get hired bruh."

After reporting these comments to Oscar Aquino, Ms. Piper acknowledges that the incident was handled the very next day by Oscar Aquino - who testified that he spoke to each member individually regarding their offensive comments about Ms. Piper's weight. The group chat was deleted the very next as well and Ms. Piper never experienced any subsequent issues with offensive comments from her coworkers. In fact, she even testifies that after these coworkers were confronted about their comments in the Private Chat, they all apologized and "felt bad" and acted "super nice" and even "pulled up a chair for [Ms. Piper]."

### iii. Knowledge of Hostile Environment

The test for employer liability depends on whether the harasser is a supervisor or a coworker. *Melissa Smith*, 2013 WL 5230659 at *15. While a coworker "cannot dock another's pay" or "demote another [coworker,]…[t]he supervisor has been empowered by the company as a distinct class of agent to make economic decisions affecting other

employees under his or her control." *Id*. at *16 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998)).

The Eleventh Circuit has established that employer liability in a case involving harassment by coworkers exists where "the employer knew (actual notice) or should have known (constructive notice) of the harassment and failed to take remedial action." *Breda v. Wolf Camera & Video*, 222 F. 3d 886, 889 (11th Cir. 2000) (citing H*enson v. City of Dundee*, 682 F. 2d 897, 905 (11th Cir. 1982)). "Actual notice is established by proof that management knew of the harassment." Watson v. Blue circle, Inc., 324 F. 3d 1252, 1259 (11th Cir. 2003) (citation omitted). Constructive notice is established where the alleged harassment "was so severe and pervasive that management reasonably should have known of it." *Id.*

In this case, Plaintiff Amber Piper alleges that she reported the offensive comments made by her coworkers that she discovered after being subsequently added to their private group chat. She alleges that her report regarding the comments was made to her supervisor, Oscar Aquino. Mr. Aquino made the following comments regarding Ms. Piper's report of the conduct:

> "She showed me a printout of the conversations that were being said about her. She printed out multiple papers to be able to give out to my meeting that I held once a month to the employees, because she wanted to confront them because she was hurt about - you know, they were saying specific things about her weight, as a woman, and that's totally uncalled for, totally disrespectful, and not something that any job should be professionalized [sic] a discussion with any employee about another employee." (Aquino Dep. 32:12-24, Aug. 15, 2019).

The Plaintiffs have failed to provide evidence outside of the legal conclusions in their Complaint that Mr. Brown was given notice that Ms. Piper had

complained that she was being subjected to a hostile environment or to sexual harassment. Based on Mr. Aquino's testimony, Ms. Piper had requested only that Mr. Aquino discuss the hurtful comments with her coworkers at a meeting in order to solicit an apology. The Defendant asserts that it never received a report from Mr. Aquino that Ms. Piper was pursuing legal action, filing an EEOC complaint, or that she had a subjective belief that she was being harassed because of her sex. Furthermore, as discussed above, Ms. Piper reported the conduct to her supervisor as advised in the Defendant's discrimination reporting procedures; and Mr. Aquino provided prompt remedial action to directly address Ms. Piper's complaint in his capacity as supervisor of Metro Solutions.

Metro Solutions had no other actual or constructive notice of any incidents that might insinuate that Ms. Piper's rights were being violated under Title VII.

### B. RETALIATION: OPPOSING A PROTECTED ACTIVITY

#### i. Overview of Applicable Law

In cases where the Plaintiff lacks direct evidence of retaliation, the Eleventh Circuit applies a burden shifting analysis under McDonnell Douglas to the retaliation claim. Brown v. Alabama Dept. of Transportation, 597 F.3d 1160, 1181 (11th Cir. 2010); Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). Based on his allegations, Plaintiff Oscar Aquino must establish a prima facie case of retaliation by showing: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal connection between the protected activity and the adverse action exists. *Brown*, 597 F.3d at 1307-08 (quoting *Bryant v. Jones*, 575 F.3d 1281, 1307-08 (11th Cir.

2009); *Crawford*, 529 F.3d at 970 (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)).

If Mr. Aquino can successfully establish a prima facie case of retaliation against Metro Solutions, the burden of production shifts to Metro Solutions to articulate "legitimate non-retaliatory reasons" for the adverse employment action. *Brown*, 597 F.3d at 1181. If Metro Solutions meets this burden, the burden shifts back to Mr. Aquino to show that the Defendant's proffered reason in "merely a pretext to mask discriminatory actions." *Brown*, 597 F.3d at 1181-82.

The activities protected by 42 U.S.C. §2000e-3(a) include activities defined by the "participation clause" and the "opposition clause." *Crawford v. Metropolitan Government of Nashville and Davidson County, TN*, 555 U.S. 271, 129 S. Ct. 846, 850 (2009). In order to seek protection under the "opposition clause," Plaintiff Oscar Aquino must demonstrate a "good-faith, reasonable belief" that Metro Solutions engaged in unlawful discrimination. *Clover v. Total System Svcs., Inc.,* 176 F.3d at 1351 (11th Cir. 1999); *Adams v. Cobb Co. School District*, 242 F. App'x. 616, 621 (11th Cir. 2007) (pur curiam). A showing of "reasonable belief" requires showing "objective reasonableness" of an employee's belief that his employer engaged in unlawful employment practices and must be measured against the existing substantive law. *Clover,* 176 F.3d at 1351 (citations omitted).

      **ii. Analysis of Elements at Issue**

Based on the arguments outlined above with respect to Ms. Piper's claim, the Defendant asserts that Mr. Aquino's alleged belief (that Metro Solutions engaged in

unlawful employment practices by violating Ms. Piper's Title VII rights) is not objectively reasonable in light of the evidence set forth above.

Additionally, there is no causal connection between Mr. Aquino's protected activity and the termination of his employment by Metro Solutions as Metro has asserted that they were never given notice that Ms. Piper believed she was being subjected to hostile environment sexual harassment. Furthermore, Ms. Piper never filed a complaint with the EEOC or threatened to sue until after Mr. Aquino had suffered the adverse employment action.

The Defendant also asserts that it has offered evidence of a legitimate non-retaliatory reason for Mr. Aquino's termination by way of testimony regarding Mr. Aquino's poor sales performance, neglect of his duties as supervisor, failure to ensure that new hires properly fill out their employment applications prior to being hired, and Ms. Piper's own report to Mr. Brown that she felt uncomfortable and threatened by Mr. Aquino's presence in her store.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been electronically filed with the Clerk of the Court via CM/ECF on this 25th day of February 2020.

//s//Rohom Khonsari, Esquire
ROHOM KHONSARI, ESQ.
Florida Bar No.: 0849081
Email: rohom@klgflorida.com
Alt. Email: alyssa@klgflorida.com

**KHONSARI LAW GROUP**
150 Second Avenue N., Suite 970
St. Petersburg, FL 33702
Phone: (727) 269-5300
Fax: (727) 269-5275
*Attorneys for Defendant*