UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMBER PIPER and OSCAR
AQUINO,

       Plaintiffs,

v.                                                   Case No: 8:18-cv-3038-T-TPB-JSS

METRO SOLUTIONS, LLC,

       Defendant.

_____/

## <u>REPORT AND RECOMMENDATION</u>

THIS MATTER is before the Court on Plaintiffs' Motion for Entry of Default Judgment ("Motion"). (Dkt. 66.) For the reasons that follow, the Court recommends that the Motion be granted in part and denied in part.

## BACKGROUND

Plaintiffs Amber Piper ("Piper") and Oscar Aquino ("Aquino," together with Piper, "Plaintiffs") bring this action pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e–2000e-17, against their former employer, Metro Solutions, LLC ("Defendant"). (Dkt. 1.) Piper alleges that, while employed by Defendant, she suffered unwelcome and egregious harassment in the workplace due to her gender, and that such harassment was so severe and pervasive as to create a hostile work environment. (Dkt. 1 at ¶¶ 65–70.) Piper further alleges that she was improperly terminated by Defendant due to her gender. (Dkt. 1 at ¶¶ 51–54.) Aquino also contends that he was improperly terminated by Defendant due to his vocal opposition

to Defendant's discrimination against Piper.  (Dkt. 1 at ¶¶ 50–57; 101–04.)  Plaintiffs commenced this action against Defendant and the sole owner of Defendant, Christopher Brown ("Brown"), seeking compensatory damages, punitive damages, and attorneys' fees and costs.  (Dkt. 1.)

Defendant and Brown answered the Complaint and appeared in the action.  (Dkt. 19.)  Subsequently, the parties reached a partial settlement, approved by the Court, to dismiss all claims in the Complaint relating to unpaid wages.  (Dkts. 31, 32.)  This matter was then set for trial during the March 2020 term before the Honorable Thomas P. Barber.  (Dkt. 39.)  The parties prepared and submitted pretrial filings in advance of the trial term.  (Dkts. 42–52.)  Due to the COVID-19 pandemic, the March 2020 trial was rescheduled for the June 2020 trial term.  (Dkts. 51, 53, 54.)

In the interim, Defendant filed an unopposed motion seeking leave to withdraw as counsel.  (Dkt. 55.)  The Court granted Defendant's motion on April 8, 2020 and directed Defendant to retain new counsel by May 1, 2020, as required by Middle District of Florida Local Rule 2.03(e).[1]  (Dkt. 56.)  Thereafter, the trial was postponed indefinitely due to the COVID-19 pandemic.  (Dkt. 57.)

On May 5, 2020, the Court directed Defendant to show cause on or before May 12, 2020 why the Court should not, in its discretion, strike Defendant's pleadings and enter a default due to its failure to obtain replacement counsel as directed.  (Dkt. 58.)  Defendant moved for an extension of time to file a response to the Court's directive,

---

[1] The Middle District of Florida Local Rules were recently revised, effective February 1, 2021.  The current applicable local rule can be found in Local Rule 2.02.

which the Court granted.  (Dkts. 61, 62.)  After Defendant failed to file any further response, the Court directed the Clerk to strike Defendant's Answer and enter a default against Defendant in favor of Plaintiffs.  (Dkt. 63.)  The Clerk entered a default the same day.  (Dkt. 64.)  Shortly thereafter, upon review of the record, the Court found that all claims against Brown had previously been dismissed with prejudice and directed the Clerk to terminate Brown as a party.  (Dkt. 67.)

On June 30, 2020, Plaintiffs filed the instant Motion for Default Judgment. (Dkt. 66.)  The Court scheduled an evidentiary hearing on the Motion.  The Court further directed Plaintiffs to serve Defendant with a copy of the order scheduling the hearing and the Motion within three days.  (Dkt. 72.)  When Plaintiffs appeared before the Court via Zoom videoconferencing on October 22, 2020, counsel explained that Defendant had not been served with notice of the hearing as directed by the Court. (Dkt. 77.)  The hearing was rescheduled for November 13, 2020 and Plaintiffs were directed to properly serve Defendant with the requisite documents on or before October 30, 2020.  (Dkt. 78.)  Thereafter, Plaintiffs filed two affidavits of service demonstrating service upon Brown individually and as Defendant's registered agent. (Dkts. 79, 80.)

On November 13, 2020, the Court held an evidentiary hearing on the Motion via Zoom videoconferencing.  (Dkt. 82.)  The Court received into evidence Plaintiffs' Exhibits 1 through 10.  (Dkts. 75, 84.)  Plaintiffs' exhibits included: (1) Department of State, Division of Corporations filing information for Defendant; (2) Defendant's employee handbook; (3) Defendant's discrimination policy; (4) GroupMe Chats; (5) a

screenshot of an employee's username; (6) a screenshot of a chat group; (7) a call log from Brown; (8) the deposition transcript of Brown; (9) an affidavit from Piper; and (10) an affidavit from Aquino.  (Dkt. 75.)  The Court also heard testimony from Piper and Aquino.  (Dkt. 83.)  Defendant did not appear at the hearing.  At the Court's request, Plaintiffs subsequently submitted additional documents relating to Plaintiffs' request for attorneys' fees, including: (1) the curriculum vitae of Peter A. Sartes, MBA/JD; (2) the curriculum vitae of Peter L. Tragos, Esq.; and (3) two decisions of this Court granting attorneys' fees commensurate with the fees sought by Plaintiffs in the Motion.  (Dkt. 81.)

## APPLICABLE STANDARDS

When a party fails to plead or otherwise defend a judgment for affirmative relief, the clerk of the court must enter a default against the party against whom the judgment was sought.  Fed. R. Civ. P. 55(a).  If the plaintiff's claim is for a sum certain or an ascertainable sum, then the clerk, upon the plaintiff's request and upon an affidavit of the amount due, must enter a judgment by default.  Fed. R. Civ. P. 55(b)(1).  In all other cases, the party entitled to judgment must apply to the district court for a default judgment.  Fed. R. Civ. P. 55(b)(2).  A court may enter a default judgment against a defendant who never appears or answers a complaint, "for in such circumstances the case never has been placed at issue."  *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1134 (11th Cir. 1986).  However, where the defaulting party has appeared in the action, the defaulting party "must be served with written notice of the application at least 7 days before the hearing."  Fed. R. Civ. P. 55(b)(2).

Furthermore, a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005); *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[2] However, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (emphasis omitted). Therefore, in considering whether to enter default judgment, the court must first determine whether the complaint states a claim for relief. In addition to the pleadings, the Court may also consider evidence presented in support of the motion for default judgment, including testimony and affidavits. *Equal Emp't Opportunity Comm'n v. Titan Waste Servs. Inc.*, No. 3:10-cv-379-MCR-EMT, 2014 WL 931010, at *6 (N.D. Fla. Mar. 10, 2014); *cf. Super Stop No. 701, Inc. v. BP Prod. N. Am. Inc.*, No. 08-61389-civ, 2009 WL 5068532, at *2 n.4 (S.D. Fla. Dec. 17, 2009) (noting that "unchallenged affidavits are routinely used to establish liability and damages" in default judgment procedures).

---

[2] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions the former Fifth Circuit rendered prior to October 1, 1981.

## ANALYSIS

### I.    Notice to Defendant

Defendant previously appeared in this action.  As such, Federal Rule of Civil Procedure 55(b)(2) requires that Defendant receive "written notice" of Plaintiffs' application for a default judgment "at least 7 days before the hearing."  Fed. R. Civ. P. 55(b)(2).   The Court directed Plaintiffs to serve Defendant with the notice scheduling the November 13, 2020 hearing, along with a copy of the Motion on or before October 30, 2020.  (Dkt. 78.)  On October 29, 2020, Plaintiffs filed an affidavit of service as directed by the Court.  (Dkt. 80.)  The affidavit reflected service upon Defendant through its registered agent, Brown.  (Dkt. 80.)  Brown was served by substituted service through his spouse, at their residence.  (Dkt. 80.)  Brown was also served in his individual capacity in the same manner.  (Dkt. 79.)

Federal Rule of Civil Procedure 55 only requires that a previously-appearing defendant be provided "written notice" of the application for a default judgment.  Fed. R. Civ. P. 55(b)(2).  Rule 55 does not require that the defendant be served with notice in the same manner as required for service of process.  *See FHL, Inc. v. Walker*, No. 2:13-cv-555-MHT, 2016 WL 3353944, at *3 (M.D. Ala. June 9, 2016) (finding Rule 55 to be satisfied by service of notice in a manner consistent with Federal Rule of Civil Procedure 5).  Pursuant to Rule 5(b)(2)(B)(ii), service of other papers in a litigation may be accomplished by leaving the paper to be served at "the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there," if the person is not represented by counsel and does not have an office.

Further, Florida Statutes § 48.062(1) provides that a limited liability company, such as Defendant, may be served through its registered agent. Brown is the registered agent for Defendant. (Dkt. 66-5.) Although Defendant was previously administratively dissolved (Dkt. 66-5), Florida Statutes § 605.0714(6) provides that "[t]he administrative dissolution of a limited liability company does not terminate the authority of its registered agent for service of process." Service of the notice upon Brown was therefore sufficient to provide the requisite "written notice" to Defendant. Based upon Plaintiffs' representations, Defendant no longer maintains an office of any kind, nor has any new counsel recently appeared in this action. As such, the undersigned concludes that Plaintiffs satisfied the notice requirement of Rule 55 by serving the requisite documents upon Brown through his spouse, at his usual abode, more than seven days before the evidentiary hearing on the Motion.

## II. Liability

### A. <u>Amber Piper</u>

In Count I of the Complaint, Piper asserts a claim against Defendant for discrimination due to a hostile work environment. (Dkt. 1.) Title VII of the Civil Rights Act prohibits employers from discriminating against any individual on the basis of sex "with respect to [her] compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). The "privileges of employment" include the privilege to work in a non-hostile work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986); *see Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Title VII is violated when a workplace becomes permeated with "discriminatory

intimidation, ridicule, and insult" that is so severe or pervasive so as to "alter the conditions of the victim's employment and create an abusive work environment." *Meritor Sav. Bank*, 477 U.S. at 67; *Harris*, 510 U.S. at 21; *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

To establish a claim under Title VII for discrimination based upon a hostile work environment, a Plaintiff must show: "(1) that [she] belongs to a protected group; (2) that [she] has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee . . . ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Miller*, 277 F.3d at 1275; *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999).

Here, Piper's allegations are sufficient to establish a claim for hostile work environment under Title VII. Piper alleges that while employed by Defendant, she participated in two different group chats created for Defendant's employees. (Dkt. 1 ¶¶ 30–33.) Within those group chats, Piper was subjected to extensive, offensive, and disturbing comments about her gender and her physical appearance. (Dkt. 1 ¶¶ 33–35.) The group chats included numerous derogatory remarks about Piper, sexual threats and overtures directed towards Piper, and sexually explicit comments and images. (Dkt. 75-4.) Piper reported the comments and group chat discussions to Aquino, Defendant's manager. (Dkt. 1 ¶¶ 19–23, 36.) Aquino, in turn, reported the

group chat discussions to Defendant, through its sole member, Brown. (Dkt. 1 ¶ 38.) In response, Brown directed Aquino to terminate Piper's employment. (Dkt. 1 ¶ 40.) After Aquino refused Defendant's unlawful request, Brown personally conducted a "secret shopper" inspection of Piper. (Dkt. 1 ¶¶ 45–46.) During this inspection, Brown openly confronted Piper and publicly berated and belittled her. (Dkt. 1 ¶¶ 46–47.) Defendant subsequently terminated Piper on June 16, 2018. (Dkt. 1 ¶ 54.) Thus, the first three elements of a *prima facie* claim for a hostile work environment are satisfied here: Piper is female, belongs to a protected class, and was subjected to harassment based upon her gender.

With respect to the fourth element regarding the severity of the harassment, the court considers: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller*, 277 F.3d at 1276. "No single factor is dispositive"; the Court must review the totality of the circumstances. *Titan Waste*, 2014 WL 931010, at *8 (citing *Miller*, 277 F.3d at 1276).

In this case, the group chat discussions at issue include humiliating comments directed at Piper, including but not limited to: "5 tons of meat"; "the world's heaviest woman"; "Hippopotamus"; a "fat ass hoe"; "gorda"; and "big ohhh fat bitch." (Dkt. 1 ¶¶ 33, 34.) Additionally, the group chat included numerous sexually explicit comments, statements about violent sexual conduct purportedly intended as "jokes," comments about employees engaging in sexual contact with Piper, and an image of a

woman's bare breasts with the comment "[b]y the way this room is rated TV MA aka a lot of man stuff aka porn/sex stuff is coming through here." (Dkt. 66-7.) These comments were not isolated to a single day or event but allegedly continued for weeks. (Dkts. 66-7; 75-4.) Moreover, Piper alleged that after conducting the secret shopper inspection, Brown openly berated Piper for her job performance, telling her she was "lazy" and "too big" to perform her job duties. (Dkt. 1 ¶ 46; Dkt. 83.) Piper testified that the harassing conduct, including the discussions in the group chat and comments from Brown, was demeaning, humiliating, and made her want to quit her position. In light of these undisputed facts, the Court concludes that Piper's allegations are sufficient to establish that Piper suffered severe harassment which altered the terms and conditions of her employment so as to create a discriminatory and abusive work environment. *Miller*, 277 F.3d at 1277; *Titan Waste*, 2014 WL 931010, at *8.

Finally, with respect to the fifth and final element of a hostile work environment claim under Title VII, Piper must show employer liability for the abusive work environment. An employer is directly liable for a hostile work environment created by coworkers "if the employer was negligent with respect to the offensive behavior." *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013). Here, Defendant set up at least one of the group chats at issue for its employees to communicate about work-related matters. Further, Defendant was made aware of both group chats and the substance of the discussions. (Dkt. 1, ¶ 38–39; Dkt. 75-8 at 37–38; Dkt. 83.) Moreover, Piper established that Defendant knew employees were engaging in the discussions while working for Defendant. (Dkt. 83.) Defendant took no action to stop the group chat

discussions and, instead, directed Aquino to "get rid of" Piper after being made aware of the discussions. (Dkt. 1 ¶ 40.) Defendant also directed another store employee to discipline Piper after Aquino refused to terminate her. (Dkt. 1 ¶ 41.) The Court therefore concludes that Defendant was negligent with respect to the offensive behavior of Piper's co-workers. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998) ("An employer is negligent with respect to sexual harassment if it knew or should have known about the conduct and failed to stop it.") (hereinafter, "*Ellerth*").

Additionally, an employer is vicariously liable for the conduct of a supervisor who takes "tangible employment action" against the victim employee, such as termination. *Ellerth*, 524 U.S. at 761. Brown, as the sole member of Defendant, controlled and directed the work of Piper and Aquino. (Dkt. 1 ¶¶ 5, 6.) Accordingly, Defendant can be held liable for the conduct of Brown, both as Defendant's agent and as Piper's supervisor, in terminating Piper. (Dkt. 1 ¶ 5.) *See Vance*, 570 U.S. at 429 (noting that an employer may be held vicariously liable for the actions of a supervisor in termination, as well as when the supervisor engages in the harassment). As such, the Court finds that Piper has established a *prima facie* claim for hostile work environment under Title VII and recommends that Plaintiffs' motion for entry of default judgment as to Count I of the Complaint be granted.

### B. Oscar Aquino

In Count V of the Complaint, Aquino asserts a claim against Defendant for retaliation in violation of Title VII of the Civil Rights Act. (Dkt. 1.) Title VII's anti-retaliation provision provides that an employer may not discriminate against an

employee because (1) the employee opposed an unlawful employment practice; or (2) the employee made a charge, testified, assisted, or participated in an investigation or proceeding under the statute.   42 U.S.C. § 2000e-3(a); *see Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 274 (2009).

To establish a claim for retaliation, a plaintiff must show that (1) he engaged in a protected activity, such as opposition to discrimination or participation in an investigation; (2) he suffered an adverse employment action; and (3) a causal relationship between the two events.   *Coutu v. Martin Cty. Bd. of Cty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995); *Finn v. Kent Sec. Servs., Inc.*, 981 F. Supp. 2d 1293, 1299 (S.D. Fla. 2013) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)).   A plaintiff stating a claim for retaliation need not show that he or she was also the target of the underlying discrimination.   *Finn*, 981 F. Supp. 2d at 1301 ("A plaintiff who engages in activity protected by Title VII and suffers an adverse employment action because of it can clearly bring a Title VII retaliation claim—regardless of whether that employee was the target of the discrimination about which she complained.").

Here, Aquino's allegations are sufficient to establish a claim for retaliation under Title VII.   Aquino established that he reported the group chat activity to Defendant, implored Defendant to take action to rectify the employee behavior, actively opposed Defendant's discrimination against Piper, and refused to unlawfully terminate her.   (Dkt. 1 ¶¶ 37–41, 47, 49, 50–53.)   Although Aquino also alleges he was participating in an investigation of Defendant's discriminatory practices, it is unclear

to the Court whether that investigation began before or after Aquino's termination.  In the Complaint, Plaintiffs state that immediately prior to Aquino's termination, Brown confronted Aquino about Piper's "discrimination claims."  (Dkt. 1 ¶ 56.)  Plaintiffs further allege that Aquino was terminated at the end of that confrontation, on June 1, 2018.  (Dkt. 1 ¶ 57; Dkt. 75-10.)  However, Plaintiffs also allege that Piper was later terminated on June 16, 2018 and then initiated a complaint with the Equal Employment Opportunity Commission.  (Dkt. 1 ¶¶ 54–55.)  Thus, it is unclear what investigation Aquino may have been participating in at the time of his termination. Regardless, the Court finds that Aquino adequately pleaded that he was engaging in a protected activity due to his opposition to Defendant's discrimination against Piper.

Additionally, Aquino suffered an adverse employment action due to his protected activity when Defendant terminated him.  (Dkt. 1 ¶ 57.)  Aquino also established the causal relationship between his protected activity and his termination. Aquino was terminated at the end of the confrontation with Brown regarding the workplace discrimination against Piper.  (Dkt. 1 ¶ 57.)  During this confrontation, Brown alleged that Aquino was being terminated because had previously sexually harassed Piper.  (Dkt. 83.)  The unchallenged testimony of Piper directly refutes this allegation, thereby indicating the allegation was patently false or pretextual.  (Dkt. 83.) Furthermore, immediately prior to his termination, Brown confiscated Aquino's phone and deleted all text messages between the two of them relating to Piper and Aquino's discrimination allegations.  (Dkt. 1 ¶ 57; Dkt. 66-9 at 6–8; Dkt. 83.)  *See Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) ("The general

rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection."). Therefore, the Court finds that Aquino established a *prima facie* claim for retaliation under Title VII and recommends that Plaintiffs' motion for entry of default judgment as to Count V of the Complaint be granted.

### III.   Remedies

On a motion for a default judgment, the court must evaluate whether the plaintiff is entitled to damages. *Blackman v. Purifoy Constr.*, No. 3:16-cv-625-RV-HTC, 2020 WL 738366, at *4 (N.D. Fla. Jan. 14, 2020), *report and recommendation adopted,* No. 3:16-cv-625-RV-HTC, 2020 WL 732954 (N.D. Fla. Feb. 13, 2020).  Title VII provides that Plaintiffs may recover back pay, front pay, compensatory damages, and punitive damages.  42 U.S.C. § 1981a(b).  Damages, unlike factual allegations, are "*not* admitted by virtue of default; rather the court must determine both the amount and character of damages."  *Blackman*, 2020 WL 738366, at *4*.  Therefore, Plaintiffs bear the burden of proving entitlement to damages.  *Id.*  In their Motion, Plaintiffs seek back pay, front pay for Aquino, punitive damages, prejudgment interest, and attorneys' fees and costs.  (Dkt. 66 at 11.)

A. **Back Pay**

A successful Title VII plaintiff is generally entitled to back pay.  *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975) ("[B]ackpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination.").  Back pay is defined as "the difference between the actual wages earned and the wages the individual would have earned in the position that, but for the discrimination, the individual would have attained." *Akouri v. Florida Dep't of Transp.*, 408 F.3d 1338, 1343 (11th Cir. 2005) (quotation omitted); *Blackman*, 2020 WL 738366, at *5.  However, the plaintiff "must make a reasonable and good-faith effort to mitigate her damages."   *Blackman*, 2020 WL 738366, at *5.

Piper seeks $6,704.80 in back pay. (Dkt. 66-1.)  This amount reflects her wages of $8.50 per hour while employed by Defendant. (Dkt. 66-1.)  Piper was unemployed from June 16, 2018 until November of 2018, when she was hired by a different Metro PCS store. (Dkt. 66-1.)  During the interim, Piper was actively looking for work and submitted approximately thirty to forty applications. (Dkt. 83.)  According to Piper, Metro PCS stores routinely contact any former Metro PCS location listed on an application to verify the applicant's experience. (Dkt. 83.)  Piper explained that she believed potential Metro PCS employers contacted Brown pursuant to this practice and therefore declined to hire her. (Dkt. 83.)  Additionally, Piper testified that following her termination by Defendant, she experienced depression, embarrassment,

isolation, and homelessness, thereby precluding her from immediately obtaining new gainful employment. (Dkt. 83.) Eventually, Piper was able to find a position with her former employer, a Metro PCS store in Kansas, and relocated there. (Dkt. 83.) In light of these facts, the Court finds that Piper made reasonable, good faith efforts to mitigate her damages and is therefore entitled to $6,704.80 for back pay.

Aquino seeks $2,125.00 in back pay. (Dkt. 66-2; Dkt. 83.) Aquino earned $850.00 per week while employed by Defendant as a manager. (Dkt. 66-2.) After his termination, Aquino was unemployed for two and one-half weeks until he regained employment with Cell Touch, Inc. (Dkt. 66-2.) The Court therefore recommends that Aquino is entitled to $2,125.00 in back pay for the period during which he was unemployed due to Defendant's unlawful conduct.

## B. Front Pay

Aquino also asks the Court to award him front pay in the amount of $4,900.00. (Dkt. 66-2.) Although reinstatement is the preferred remedy in a wrongful discharge case, "when extenuating circumstances warrant[,] the court may award a plaintiff front pay in lieu of reinstatement." *Armstrong v. Charlotte Cty. Bd. of Cty. Comm'rs*, 273 F. Supp. 2d 1312, 1315 (M.D. Fla. 2003). Front pay is thus a prospective remedy, and somewhat inherently speculative. *Id*. Further, front pay is calculated "to end on the date that the discrimination victim attains the position []he would have been in but for the discrimination." *Equal Empl't Opportunity Comm'n v. Joe's Stone Crab, Inc.*, 15 F. Supp. 2d 1364, 1380 (S.D. Fla. 1998).

Aquino contends that due to Defendant's unlawful conduct, he was compelled to accept a lesser position with Cell Touch, Inc., earning approximately $100 less per week than he was making while employed by Defendant. (Dkt. 66-2.) As of June 29, 2020, Aquino continued to earn $50 less per week. (Dkt. 66-2.) Additionally, Aquino testified that as of November 13, 2020, more than two years after his termination, he was still earning less per week than he was earning while employed by Defendant. (Dkt. 83.) Aquino therefore seeks front pay in the amount of $4,900.00 to compensate him for the reduced pay. Due to nature of Aquino's termination, and the fact that Defendant is no longer operating a Metro PCS store, reinstatement is not an available remedy. As such, front pay is appropriate to compensate Aquino for his reduced compensation following his unlawful termination by Defendant. The Court therefore recommends that Aquino is entitled to $4,900.00 in front pay. *See Armstrong*, 273 F. Supp. 2d at 1318 (awarding plaintiff two years of front pay, in light of plaintiff's obligation to mitigate damages).

### C. Punitive Damages

A successful plaintiff may also recover punitive damages under § 1981a of the Civil Rights Act. 42 U.S.C. § 1981a. Punitive damages may be available if the employer engaged in "discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999). In

determining punitive damages, the focus of the inquiry is the employer's state of mind. *Id.* at 535–38.

Here, both Plaintiffs seek punitive damages in the amount of $50,000, the maximum amount available against an employer of Defendant's size.  42 U.S.C. § 1981a(b)(3)(A).  (Dkt. 1 ¶ 3; Dkt. 66 at 11.)  The Court recommends that Piper be awarded $50,000 in punitive damages.  The evidence before the Court demonstrates that Piper was subjected to extreme, outrageous, and unlawful harassment while employed by Defendant.  Interspersed with chatter about sales, meetings, work schedules, and store inventory, the group chat discussions include demeaning comments about Piper, her physical appearance, derogatory terms and innuendoes, pornographic "jokes" and images, threats of sexual violence against women, and statements about sexual violence against Piper specifically.

Notwithstanding the egregious nature of the group chat discussions, the evidence presented by Plaintiffs established that Defendant, through Brown, became aware of the group chat discussions and the harassment Piper was experiencing, but did nothing to stop it.  Rather, Defendant sought to terminate Piper and advised Aquino, Defendant's manager, *against* taking remedial action regarding the group chats. (Dkts. 83.)  Moreover, on June 16, 2018 when Piper was terminated, Piper was escorted off the premises by police—without first being told she had been terminated. The police informed Piper that she was trespassing on Defendant's property, even though she was listed on the schedule and directed to appear for work that day.  After Piper was escorted out of the store and police surrounded her personal vehicle, Brown

stood in front of her car, preventing her from leaving and thereby maliciously prolonging her distress, fear, and humiliation.  (Dkt. 83.)  Based upon these facts, the Court finds that Defendant acted with malice or reckless indifference to Piper's federally protected rights and therefore recommends that she be awarded $50,000 in punitive damages.

The Court further recommends that Aquino's request for $50,000 in punitive damages be denied.  Although Defendant's conduct towards Aquino was unlawful, the Court does not find that there is sufficient evidence of malice or reckless indifference by Defendant toward Aquino.  Specifically, as explained above, it is unclear to the Court whether Aquino was terminated after participating in an investigation.  Further, Plaintiffs' evidence does not show egregious or malicious conduct by Defendant towards Aquino.  *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1322 (11th Cir. 1999) ("Punitive damages are an extraordinary remedy, to be reserved for egregious cases.") (internal punctuation and citation omitted); *see id.* at 1322–23 ("Examples of such egregious conduct might include: (1) a pattern of discrimination, (2) spite or malevolence, or (3) a blatant disregard for civil obligations.").  Moreover, Aquino's testimony established that he was able to quickly recover from the experience and obtain new gainful employment.  Therefore, the evidence does not establish that that Defendant's termination of Aquino—although unlawful—was motivated by malice or reckless indifference to Aquino's federally protected rights.  Accordingly, the undersigned recommends that Plaintiffs' motion be denied with respect to Aquino's request for punitive damages.

### D. <u>Prejudgment interest</u>

Plaintiffs have also requested prejudgment interest.  (Dkt. 66.)  The Court may, in its discretion, award prejudgment interest on a backpay award.  *Richardson v. Tricom Pictures & Prods., Inc.*, 334 F. Supp. 2d 1303, 1316 (S.D. Fla. 2004), *aff'd,* 183 F. App'x 872 (11th Cir. 2006).  Indeed, it is presumed that the Court should award prejudgment interest on backpay to a successful Title VII plaintiff, but it is not required.  *Id.*; *see Armstrong*, 273 F. Supp. 2d at 1319 ("The award of prejudgment interest on back pay to a prevailing plaintiff is an equitable remedy, committed to the sound discretion of the trial court.").  Prejudgment interest "adjusts the back pay award for inflation and reflects the present day value of income that should have been paid to the claimant in the past."  *Joe's Stone Crab, Inc.*, 15 F. Supp. 2d at 1379.  The Court therefore recommends that Plaintiffs are entitled to prejudgment interest on their backpay awards, from the date of their respective terminations to the date of final judgment.  *Armstrong*, 273 F. Supp. 2d at 1321.

### E. <u>Attorneys' Fees and Costs</u>

Plaintiffs further request an award of reasonable attorneys' fees and costs.  Absent "special circumstances," a prevailing Title VII plaintiff is ordinarily awarded attorneys' fees.  *Christiansburg Garment Co. v. Equal Empl't Opportunity Comm'n*, 434 U.S. 412, 417 (1978); *Smith v. Chandler*, No. 6:11-cv-1332-ORL-31, 2013 WL 3323187, at *1 (M.D. Fla. July 1, 2013).  A "prevailing" plaintiff is one who is deemed entitled to relief on the merits of his or her claim, but need not prevail on all issues to justify

an award of attorneys' fees.  *Loos v. Club Paris, LLC*, 731 F. Supp. 2d 1324, 1328–29 (M.D. Fla. 2010).   Accordingly, the undersigned recommends that Plaintiffs are entitled to an award of attorneys' fees.

Piper seeks $23,765.43 in attorneys' fees and costs and Aquino seeks $15,721.00 in fees and costs.  (Dkt. 66.)  Plaintiffs submitted invoices from counsel setting forth the rates, hours worked, tasks performed, and costs expended.  (Dkts. 66-3, 66-4.) Additionally, Plaintiffs also provided the Court with supplemental materials regarding the reasonableness of the requested hourly rates.  (Dkt. 81.)

Courts in the Eleventh Circuit apply the "lodestar approach to determine a reasonable attorney's fee."  *Loos*, 731 F. Supp. 2d at 1329.  Under this formula, the fees awarded are the "product of the number of reasonable hours expended and the reasonable hourly rate."  *Id*.  The plaintiff seeking fees must demonstrate that the requested rate is "'the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.'"  *Loos*, 731 F. Supp. 2d at 1329 (quoting *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)).

The "fee applicant bears the burden of documenting the appropriate number of hours" spent on the matter.  *Loos*, 731 F. Supp. 2d at 1330.  The Court may consider "direct evidence of charges by lawyers under similar circumstances or by opinion evidence."  *Norman*, 836 F.2d at 1299.  Additionally, the court may use its own expertise and judgment to make an appropriate independent assessment of the reasonable value of an attorney's services.  *Id.* at 1303–04.  In calculating the hours

reasonably expended on litigation, the Court should exclude excessive, unnecessary, and redundant hours and any time spent litigating discrete and unsuccessful claims. *Id.* at 1301–02.

While Plaintiffs bear the burden of producing specific information in support of their fee request, "those opposing fee applications have obligations, too." *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir.1999). "In order for courts to carry out their duties in this area, 'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'" *Id.* (quoting *Norman*, 836 F.2d at 1301). Accordingly, a fee opponent's failure to lodge specific objections to an attorney fee request is generally viewed as fatal. *See Scelta v. Delicatessen Support Servs. Inc.*, 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002); *see also Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387, 1389 (11th Cir. 1997).

After the lodestar is determined, the Court must decide whether an adjustment to the lodestar is necessary based on the results obtained. *Norman*, 836 F.2d at 1302. As such, the Court may adjust the lodestar based on whether the results obtained were exceptional, excellent, or of partial or limited success, thereby compensating for all hours reasonably expended for excellent results or reducing the amount for partial or limited success. *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434–36 (1983)).

Defendants defaulted in this action and thus filed no objections to Plaintiffs' fee request. In the absence of any objections, and upon independent review of the Court as set forth below, it is recommended that the Court find that the requested rates and hours expended are reasonable.

*i.      Reasonable Rates*

Plaintiffs request an hourly rate of $350 per hour for work performed by attorney Peter L. Tragos.  (Dkts. 66-3, 66-4.)  Mr. Tragos has seven years of experience in the practice of law, handling primarily personal injury, wage, and overtime claims.  (Dkt. 81-2.)  This Court has previously found Mr. Tragos's rate of $350 per hour to be a reasonable hourly rate for his services.  *See Wheeler v. Gulf Coast Hosp. Grp. Inc.*, No. 8:18-cv-02240-JSM-CPT (December 10, 2018) (Moody, J.); *Thomas v. Carrington's Caring Angels, LLC*, No. 8:17-cv-01586-VMC-MAP (February 14, 2018) (Covington, J.).  (Dkt. 81.)  The undersigned therefore finds that the rate requested for Mr. Tragos reflects the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.

Plaintiffs request an hourly rate of $450 per hour for work performed by attorney Peter A. Sartes.  (Dkts. 66-3, 66-4.)  Mr. Sartes has almost twenty years of experience in the practice of law, handling primarily personal injury claims in state and federal courts.  (Dkt. 81-1.)  This Court previously found Mr. Sartes's rate of $450 per hour to be a reasonable hourly rate for his services.  *See Wheeler*, No. 8:18-cv-02240-JSM-CPT (December 10, 2018) (Moody, J.); *Thomas*, No. 8:17-cv-01586-VMC-MAP (February 14, 2018) (Covington, J.).  (Dkt. 81.)  The undersigned therefore finds that the rate requested for Mr. Sartes reflects the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.

Finally, Plaintiffs seek an hourly rate of $95 per hour for the work of a paralegal. Plaintiffs did not submit evidence to the Court regarding the paralegal's professional history.  However, the undersigned notes that this Court has previously found a rate of $95 per hour for the work of a paralegal from the same firm, for similar work, to be reasonable.  *Wheeler*, No. 8:18-cv-02240-JSM-CPT (December 10, 2018) (Moody, J.); *Thomas*, No. 8:17-cv-01586-VMC-MAP (February 14, 2018) (Covington, J.).  (Dkt. 81.)   The undersigned therefore finds the rate requested for paralegal time to be reasonable.  *BBY Sols., Inc. v. Livingstone*, No. 3:15–cv–1001–J–32JRK, 2016 WL 7668486, at *7 (M.D. Fla. Apr. 20, 2016) (finding a rate of $160 per hour for a paralegal to be reasonable).

### ii.   *Hours Reasonably Expended*

Piper seeks attorneys' fees for approximately 56.3[3] attorney hours and less than five hours of paralegal time.  (Dkt. 66-3.)  The Court finds this to be reasonable, in light of the fact that Defendant initially appeared in this action and defended against Piper's claims.  Moreover, this matter was scheduled for trial in March of 2020.  (Dkt. 39.)  Counsel prepared for trial and the requisite pretrial filings.  (Dkts. 42–45, 49, 66-3.)  Defendant defaulted only after the trial was postponed due to the COVID-19 pandemic.  Moreover, the invoice submitted in support of the Motion does not reflect excessive or duplicative time spent on Piper's case.  (Dkt. 66-3.)  Finally, counsel achieved a positive result for Piper.  As such, the Court recommends that Piper be

---

[3] The Court notes that Plaintiffs' Motion did not include an hourly summary or total.

awarded attorneys' fees for the rates and hours requested in the Motion.  The Court further recommends that Plaintiffs be directed to submit a summary of hours worked by each attorney and paralegal for final computation of the fees award prior to the entry of final judgment.

Similarly, Aquino seeks approximately 33.2 attorney hours and less than two hours of paralegal time. (Dkt. 66-4.)  The Court also finds this request to be reasonable, for the same reasons stated above.  Moreover, the Court has reviewed the invoices for Piper and Aquino separately and finds that the time spent on each case was not unduly duplicative.  The amounts requested for each client are representative of the time invested on each respective Plaintiff's case.  Therefore, the Court recommends that Aquino be awarded attorneys' fees for the rates and hours requested in the Motion. The Court further recommends that Plaintiffs be directed to submit a summary of hours worked by each attorney and paralegal for final computation of the fees award prior to the entry of final judgment.

### iii.    Adjustments to the Lodestar

After determining the lodestar amount, "[t]he court may then adjust the lodestar to reach a more appropriate attorney's fee, based on a variety of factors, including the degree of the plaintiff's success in the suit."  *Ass'n of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006).  In determining whether to adjust the lodestar amount, the court should compensate for all hours reasonably expended if the result was excellent, but must reduce the lodestar if the result was partial or limited success.  *Norman*, 836 F.2d at 1302.  Upon consideration, no adjustment to the

lodestar is recommended as Plaintiffs prevailed and received default judgment on their claims.

### iv.    Costs

Plaintiffs also seek an award of costs.  (Dkt. 66.)  The costs requested are not separated from the attorneys' fees in the Motion but are set forth in the invoices submitted.  (Dkts. 66-3, 66-4.)  A prevailing Title VII plaintiff is entitled to an award of costs.  *Christianburg*, 434 U.S. 421–22; *Loos*, 731 F. Supp. 2d at 1331; *see* 42 U.S.C. § 2000e-5(k).  However, not all costs are properly recoverable.  28 U.S.C. § 1920; *see D&M Carriers, LLC v. Spirit*, 11-80722-civ-Marra/Hopkins, 2013 WL 12095541, at *1 (S.D. Fla. Oct. 17, 2013).  Notably, postage costs, which Plaintiffs seek here, are not recoverable.  *See* 28 U.S.C. § 1920; *Thomas*, No. 8:17-cv-01586-VMC-MAP (February 14, 2018) (Covington, J.) (Dkt. 81); *Scelta*, 203 F. Supp. 2d at 1339.  However, filing fees, clerk fees, transcript fees, and the costs for necessary copies are properly awarded to the prevailing party.  28 U.S.C. § 1920.

In addition to the statutory limitations, a prevailing plaintiff is only entitled to receive such costs that are "specifically enumerated" and adequately described for the Court's consideration.  *Loos*, 731 F. Supp. 2d at 1331; *Scelta*, 203 F. Supp. 2d at 1340.  Most of the assessed costs appearing on the invoices in the Motion lack sufficient description.  For example, on July 10, 2018, the following entry appears on the invoice for Piper: "Piper $18.38."  (Dkt. 66-3 at 2.)  Entries in this format appear throughout the invoices for both Piper and Aquino, and Plaintiffs did not offer any affidavits or

other explanation to justify these costs. Accordingly, the Court is unable to examine whether the full amount of costs requested should be awarded.

As explained above, Plaintiffs' Motion seeks only a single lump sum amount for each Plaintiff for "attorney's fees and costs." (Dkt. 66 at 11.) The undersigned recommends that Plaintiffs' request for attorneys' fees and costs be granted insofar as Plaintiffs are entitled to receive both attorneys' fees and costs. However, the undersigned further recommends that Plaintiffs be directed to submit a bill of costs delineating taxable fees in accordance with 28 U.S.C. § 1920 prior to the entry of final judgment.

### F. Reservation of Jurisdiction

Finally, Plaintiffs also request that the Court "reserve jurisdiction in this matter for the purpose of enforcing the Judgment of the Court and for the purpose of allowing the Plaintiffs' leave to move this Honorable Court to pierce the veil" of Defendant. (Dkt. 66 at 10.) Plaintiffs do not cite any legal authority in support of this request. However, Federal Rule of Civil Procedure 69 "appears to provide the relief Plaintiffs seek." *Ironworkers Local Union No. 808 v. Champion Steel of Cent. Fla., Inc.*, No. 6:09-cv-448-ORL-31KRS, 2010 WL 1961299, at *7 (M.D. Fla. Apr. 23, 2010), *report and recommendation adopted,* No. 6:09-cv-448-ORL-31KRS, 2010 WL 1961165 (M.D. Fla. May 17, 2010). Nonetheless, the undersigned recommends that the Court reserve jurisdiction for a period of one year to issue writs as may be necessary to effectuate the judgment of the Court. *JPMorgan Chase Bank, N.A. v. Sun State Capital Properties*, No. 617-cv-110-ORL-22DCI, 2018 WL 2017606, at *1 (M.D. Fla. May 1, 2018) (denying

motion for open-ended reservation of jurisdiction, but reserving jurisdiction for one year to consider motions for fees and costs and to issue "writs of possession").

## CONCLUSION

Accordingly, it is **RECOMMENDED** that:

1. Plaintiffs' Motion for Default Judgment (Dkt. 66) be **GRANTED in part** and **DENIED in part** to the extent stated herein.

2. The Clerk be directed to enter judgment in favor of Plaintiffs Amber Piper and Oscar Aquino and against Defendant Metro Solutions, LLC as to Counts I and V in Plaintiffs' Complaint (Dkt. 1).

3. Plaintiff Amber Piper be awarded back pay in the amount of $6,704.80, punitive damages in the amount of $50,000, attorneys' fees and costs in an amount to be determined after submission of an hours summary and bill of costs, and prejudgment interest calculated from June 16, 2018 to the date of final judgment, with post judgment interest to accrue pursuant to 28 U.S.C. § 1961.

4. Plaintiff Oscar Aquino be awarded back pay in the amount of $2,125, front pay in the amount of $4,900, attorneys' fees and costs in an amount to be determined after submission of an hours summary and bill of costs, and prejudgment interest calculated from June 1, 2018 to the date of final judgment, with post judgment interest to accrue pursuant to 28 U.S.C. § 1961.

5.  The Court reserve jurisdiction for a period of one year to issue writs as may

be necessary to effectuate the judgment of the Court.

**IT IS SO REPORTED** in Tampa, Florida, on February 16, 2021.


_____

JULIE S. SNEED

UNITED STATES MAGISTRATE JUDGE




## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report

and Recommendation's factual findings and legal conclusions.  A party's failure to file

written objections waives that party's right to challenge on appeal any unobjected-to

factual finding or legal conclusion the district judge adopts from the Report and

Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Thomas P. Barber
Counsel of Record